**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **MARY CARROLL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No: 07C 1575** |
| | ) | **Honorable Rebecca R. Pallmeyer** |
| **MERRILL LYNCH, JIM KELLIHER,** | ) | |
| **and PATRICIA KELLIHER,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
<u>MOTION FOR COMPLETE SUMMARY JUDGMENT</u>**

# TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................................1

II.    PROCEDURAL HISTORY................................................................................2

III.   ARGUMENT AND AUTHORITY ...................................................................3

     A.    SUMMARY JUDGMENT STANDARD...............................................3

     B.    PLAINTIFF'S DISCRIMINATION, HARASSMENT, AND RETALIATION CLAIMS PREMISED ON SEXUAL ORIENTATION SHOULD BE DISMISSED ....................................................................4

          1.    Sexual Orientation-Based Claims Are Not Cognizable Under Title VII.....5

          2.    Plaintiff's Claims Based on Her Sexual Orientation Have Already Been Litigated and Are Therefore Barred...........................................................6

     C.    PLAINTIFF CANNOT NOW RECAST THE SAME CHALLENGED EVENTS AS GENDER DISCRIMINATION, RATHER THAN SEXUAL ORIENTATION DISCRIMINATION .....................................................................................9

          1.    Plaintiff Has Consistently Testified That the Challenged Acts Were Because of Her Sexual Orientation – Not Her Gender .............................10

          2.    Plaintiff Did Not Exhaust Her Administrative Remedies With Regard to Gender Discrimination .............................................................................11

     D.    PLAINTIFF'S CLAIMS AGAINST MERRILL LYNCH OVER A DISCRETIONARY BONUS FAIL AS A MATTER OF LAW .........................12

          1.    Plaintiff Has No Claim Under the Illinois Wage Payment and Collection Act..........................................................................................................13

          2.    Plaintiff's Breach of Contract Claim Fails as a Matter of Law ................15

          3.    Plaintiff Cannot Establish A *Quantum Meruit* Claim................................16

     E.    PLAINTIFF'S CLAIM AGAINST MERRILL LYNCH FOR TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS IS MERITLESS .....17

     F.    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S EAVESDROPPING CLAIMS ....................................................21

01968167.3

1. Plaintiff's Eavesdropping Claim Against Mrs. Kelliher Fails ..................22

2. Plaintiff's Eavesdropping Claim Against Mr. Kelliher Fails....................24

3. Plaintiff's Eavesdropping Claim Against Merrill Lynch Fails .................25

G. PLAINTIFF'S CLAIMS OF INTRUSION INTO SECLUSION ARE MERITLESS ...........................................................................................................26

1. Plaintiff's Intrusion Into Seclusion Claims Against the Kellihers Fail As a Matter of Law ...........................................................................................26

2. Plaintiff's Intrusion Into Seclusion Claim Against Merrill Lynch Is Baseless.......................................................................................................28

H. PLAINTIFF'S CLAIMS OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS ARE MERITLESS ............................................................................29

1. Plaintiff Claim Of Intentional Infliction Of Emotional Distress Claim Against the Kellihers Fails.........................................................................29

2. Plaintiff's Claim Of Intentional Infliction Of Emotional Distress Against Merrill Lynch Is Meritless ........................................................................32

IV. CONCLUSION....................................................................................................34

01968167.3

**TABLE OF CASES CITED**

*Acosta v. Scott Labor LLC,* 377 F.Supp.2d 647 (N.D. Ill. 2005) .................................................27

*Boddiker v. McPartlin*, 379 Ill. 567 (Ill. 1942) ........................................................................ 6

*Breneisen v. Motorola, Inc.,* 512 F.3d 972 (7th Cir. 2008) ............................................................29

*Burns v. Masterbrand Cabinets, Inc.*, 874 N.E.2d 72, (Ill. App. Ct. 2007)...................................26

*Byker v. Sequent Computer Sys., Inc.,* 1997 WL 639045 (N.D.Ill. Oct. 1, 1997) .........................14

*Cassidy v. American Broadcasting Companies*, 377 N.E.2d 126, (Ill. App. Ct. 1978)................28

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ..............................................................................4

*Chemsource, Inc. v. Hub Group, Inc.*, 106 F.3d 1358 (7th Cir. 1997) ..........................................21

*Cox v. Bigler*, 2006 U.S.Dist. LEXIS 65007, *9 (S.D. Ill. Sept. 12, 2006)...................................22

*Desnick v. ABC, Inc.*, 44 F.3d 1345 (7th Cir. 1995) ....................................................................27

*Eick v. Perk Dog Food Co.,* 347 Ill. App. 293 (Ill. App. Ct. 1952).............................................28

*Faragher v. Boca Raton,* 524 U.S. 775 (1998) .......................................................................... 12

*Feltmeier v. Feltmeier,* 207 Ill. 2d 263 (Ill. 2003) ......................................................................29

*Garcia v. Vill. of Mt. Prospect*, 360 F.3d 630 (7th Cir. 2004)........................................................7

*Goodwin v. Bd. of Trustees of the Univ. of Ill.,* 442 F.3d 611 (7th Cir. 2006) ...............................8

*Hamner v. St. Vincent Hosp. and Health Care Center, Inc.,* 224 F.3d 701 (7th Cir. 2000)..........5,6

*Harriston v. Chicago Tribune Co.,* 992 F.2d 697 (7th Cir. 1993) .................................................29

*Haywood v. Lucent Techs., Inc.*, 323 F.3d 524 (7th Cir. 2003) ......................................................4

*Henderson-Smith & Assoc., Inc. v. Nahamani Family Service Ctr., Inc.*, 323 Ill.App.3d 15 (Ill. App. Ct. 2001).............................................................................................................................15

*Hilt-Dyson v. City of Chicago*, 282 F.3d 456 (7th Cir. 2002)........................................................12

*Hunter v. Deutsche Bank AG,* 866 N.Y.S.2d 270 (N.Y. App. Div. 2008)....................................17

*IK Corp. v. One Financial Place Partner*, 558 N.E.2d 161 (Ill. App. Ct. 1990)..........................19

*Industrial Specialty Chemicals v. Cummins Engine Co.*, 918 F.Supp. 1173 (N.D. Ill. 1996).......16

*Kikson v. Underwriters Laboratories, Inc.,* 492 F.3d 794 (7th Cir. 2007) .....................................19

*Knickman II v. Midland Risk Services-Ill., Inc.*, 700 N.E.2d 458 (Ill. App. Ct. 1998).................19

*Knierim v. Izzo,* 22 Ill. 2d 73 (Ill. 1961) .......................................................................................32

*Krieger v. Adler, Kaplan & Begy,* 1997 WL 323827 (N.D. Ill. June 11, 1997) ...........................16

*Lifton v. Brd. of Educ. of City of Chicago,* 416 F.3d 571 (7th Cir. 2005) ....................................29

*Lovegren v. Citizens First Nat'l Bank of Princeton*, 534 N.E.2d 987 (Ill. App. Ct. 1989) ..........26

*Lovegren v. Citizens First Nat'l Bank,* 126 Ill.2d 411 (Ill. 1989) ................................................26

*McGrath v. Fahey,* 126 Ill. 2d 78 (Ill. 1988) ................................................................................29

*Miller v. Equitable Life Assur, Soc. of U.S.,* 181 Ill. App. 3d 954 (Ill. App. Ct. 1989)................31

*Miller v. Motorola, Inc.*, 560 N.E.2d 900 (Ill. App. Ct. 1990) .....................................................28

*Montana v. United States,* 440 U.S. 147 (1979) .............................................................................8

*Morrison v. Sandell,* 112 Ill. App. 3d 1057 (Ill. App. Ct. 1983) ..................................................31

*Nat'l Inspection & Repairs, Inc. v. George S. May International Co.,* 2010 WL 1407791 (7th Cir. Apr. 9, 2010)...............................................................................................................................16

*Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75 (1998)................................................5

*Onofrei v. General Security Services Corp.,* 2005 U.S. LEXIS 32716 (N.D. Ill. 2005) ................5

*Paradise v. Augustana Hosp. & Health Care Ctr.,* Ill.Dec. 147 (Ill. App. Ct. 1991) ..................16

*Pirela v. Vill. of N. Aurora,* 935 F.2d 909 (7th Cir. 1991).............................................................7

*Public Fin. Corp. v. Davis,* 66 Ill. 2d. 85 (Ill. 1976) ...................................................................29

*Quist v. Board of Trustees of Community College Dist. No. 525,* 629 N.E.2d 807 (Ill. App. Ct. 1994) ..............................................................................................................................................19

*Reed v. AMAX Coal Co.,* 971 F.2d 1295 (7th Cir. 1992)...............................................................7

*Roberts v. Adkins,* 921 N.E.2d 802 (Ill.App.Ct. 2010) ................................................................15

01968167.3

*Russell v. American Broadcasting Co., Inc.,* 1995 U.S. LEXIS 7528 (N.D. Ill. May 30, 1995)...27

*Schroeder v. Lufthansa German Airlines,* 875 F.2d 613 (7th Cir. 1989) ......................................29

*Sitar v. Indiana Dept. of Transportation,* 344 F.3d 720 (7th Cir. 2003) .......................................11

*Spearman v. Ford Motor Co.*, 231 F.3d 1080 (7th Cir. 2000)...........................................................5

*Teague v. Mayo,* 553 F.3d 1068 (7th Cir. 2009).................................................................................8

*Torcasso v. Standard Outdoor Sales, Inc.*, 157 Ill. 2d 484 (1993) ..................................................6

*Ulane v. Eastern Airlines, Inc.* 742 F.2d 1081 (7th Cir. 1984)..........................................................5

*Warsco v. Preferred Technical Group,* 258 F.3d 557 (7th Cir. 2001)............................................20

*Williams v. So. Ill. Riverboat/Casino Cruises, Inc.,* 2008 U.S. Dist. LEXIS 31309 (S.D. Ill. April 16, 2008) .........................................................................................................................................32

*Wimmer v. Suffolk County Police Dept.,* 176 F.3d 125 (2nd Cir. 1999)...........................................6

*Vega-Rodriguez v. Puerto Rica Telephone Co.,* 110 F.3d 174 (1st Cir. 1997) ..............................27

*Vela v. Village or Sauk Jewel Food Co.,* 218 F.3d 661 (7th Cir. 2000) ........................................11

01968167.3

# I.     INTRODUCTION[1]

Plaintiff Mary Carroll, a former trade balancer for Defendant Merrill Lynch, Pierce, Fenner & Smith Inc. ("Merrill Lynch"), was discharged following a pattern of erratic behavior which culminated in a highly inappropriate and threatening call to the home of Defendant James Kelliher, a Merrill Lynch supervisor, on Thanksgiving evening in 2005, in which she admittedly cursed, yelled, and threatened Mr. Kelliher.  Plaintiff admits she was "enraged" when she made the call — that she had "f*ing snapped."  In fact, the call was so alarming that Mr. Kelliher's spouse (Defendant Patricia Kelliher) became concerned that Plaintiff was going to harm her husband or her family.  Consequently, she recorded a portion of the call.  Mr. Kelliher then took the recorded phone call to the police the next day.  Despite her egregious behavior, Plaintiff has filed suit against Merrill Lynch and the Kellihers asserting a litany of meritless claims and contending that Defendants somehow acted unlawfully *towards her*.

Plaintiff claims can be loosely divided into four categories: 1) claims of discrimination, harassment & retaliation; 2) state law claims challenging Plaintiff's failure to receive a discretionary bonus while on administrative leave pending discharge; 3) claims arising out of the recording Mrs. Kelliher made of Plaintiff's threatening call to her home on Thanksgiving evening; and (4) a claim that (an unknown person at) Merrill Lynch somehow interfered with an alleged contractual relationship that Plaintiff was allegedly going to enter into with a prospective employer (whom even Plaintiff cannot locate or identify).

For the reasons stated below, Defendants are entitled to judgment as a matter of law on all of Plaintiff's claims in this lawsuit.  Defendants therefore respectfully request dismissal.

---

[1] All facts in this Introduction are repeated elsewhere in this Memorandum with references to the relevant paragraph in Defendants' Statement of Undisputed Material Facts (filed herewith).  **Defendants accept Plaintiff's version of the relevant facts in this matter for summary judgment purposes only and specifically reserve their right to present contrary evidence if this matter should proceed to trial**.

## II.    PROCEDURAL HISTORY

On February 13, 2007, Plaintiff filed a Complaint with the Illinois Human Rights Commission ("IHRC") alleging that Merrill Lynch discriminated against her based on her sexual orientation (lesbian) and terminated her employment in retaliation for having reported complaints of sexual orientation harassment in violation of the Illinois Human Rights Act ("IHRA").   Facts,¶ 78 and Ex. E-4.[2]  Plaintiff further alleged that Merrill Lynch failed to accommodate her alleged disability because it failed to make her work station ergonomic. *Id.*

On March 21, 2007, Plaintiff filed a Complaint against Merrill Lynch with this Court alleging claims of discrimination, harassment and retaliation based on sex in violation of Title VII and tortious interference with contractual relations.  Dkt. 1.[3]  On June 7, 2007, a stay was entered in this case pending the outcome of the IHRC matter. Dkt. 14.

On March 21, 2008, Plaintiff filed her First Amended Complaint with this Court which added two new defendants, Jim and Patricia Kelliher, and asserted a total of seven claims. Dkt. 33. This amended pleading asserted the following claims against Merrill Lynch: (1) discrimination, harassment and retaliation in violation of Title VII, The Civil Rights Act of 1866, 42 U.S.C. §1981[4] and the Illinois Civil Rights Act of 2003; (2) Illinois Wage Payment Collection Act and Illinois Minimum Wage Law; (3) breach of contract; (4) *quantum meruit*; (5) Illinois Eavesdropper Act (IEA); (6) intrusion into seclusion; and (7) intentional infliction of emotional distress.  *Id.* Against the Kellihers, Plaintiff's First Amended Complaint contained

---

[2]References to Defendants' Statement of Undisputed Material Facts will be denoted herein as "Facts," along with the appropriate paragraph number and/or Exhibit reference.

[3] References to the District Court record will be made by docket entry number and denoted as "Dkt. ___"

[4] Although Plaintiff cites to the Civil Rights Act of 1866 and 42 U.S.C. §1981, both of these deal solely with race claims, and Plaintiff does not allege that she was harassed, discriminated or retaliated against on the basis of her race (Caucasian).

claims of eavesdropping, intentional infliction of emotional distress and intrusion into seclusion. *Id.* On June 6, 2008, Plaintiff filed a Second Amended Complaint in federal court adding a claim of tortious interference with contractual relations against Merrill Lynch. Dkt. 44.

On June 18, 2008, Plaintiff filed her First Amended Complaint against Merrill Lynch in the IHRC matter clarifying that her complaints of discrimination, harassment and retaliation were based <u>solely</u> on her sexual orientation. Facts, ¶ 86, Ex. E-2. In it, she stated: "Complainant, Mary Carroll, brings this Complaint against Respondent Merrill Lynch seeking damages for Respondent's egregious <u>sexual orientation</u> discrimination, harassment, retaliation and related illegal conduct constituting violations of Illinois Human Rights Act." *Id.* at ¶1 (emphasis added). On September 10, 2008, after litigating the matter for 18 months in the IHRC, Merrill Lynch filed a Motion to Dismiss Plaintiff's Claims or, in the Alternative, for Judgment as a Matter of Law in the IHRC matter. Facts, ¶ 89, Ex. E-7.

On June 3, 2009, the stay was lifted on this federal case. Dkt. 53. The discovery period in this matter ended on March 31, 2010. Dkt. 56.

On April 9, 2010, the IHRC Administrative Law Judge ("ALJ") entered an order granting Merrill Lynch's dispositive motion and recommending that the matter be dismissed in its entirety. *See* IHRC's Recommended Order and Decision ("IHRC Decision"). Facts, ¶ 90, Ex. E-2. Since Plaintiff did not file any exceptions to the IHRC's Recommended Order, the Recommended Order and Decision is the final Order of the Commission. ILL. ADMIN. CODE tit. 56, § 5300.910.

## III.  ARGUMENT AND AUTHORITY

### A.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file together with any affidavits, if any, show that there is no genuine issue of

material fact and that the moving party is entitled to a judgment or a matter of law." FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In analyzing a motion for summary judgment, the court must view the facts in a light most favorable to the non-moving party. *Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 529 (7th Cir. 2003). The non-moving party is not burden-free, however, since she must set forth specific facts showing that there is a genuine issue for trial. *Id.*; FED.R.CIV.P. 56(e). If the non-moving party fails to make a showing sufficient to establish the existence of an element essential to her case, and on which she will bear the burden of proof at trial, the federal rules mandate the entry of summary judgment. *Id.*

**B.    PLAINTIFF'S DISCRIMINATION, HARASSMENT, AND RETALIATION CLAIMS PREMISED ON SEXUAL ORIENTATION SHOULD BE DISMISSED.**

Plaintiff's allegations of harassment, discrimination and retaliation at the IHRC and in this federal forum are entirely duplicative. In both proceedings, Plaintiff has consistently alleged that while employed at Merrill Lynch she was harassed, discriminated and retaliated against on the basis of her sexual orientation (or complaints relating to the same) in the following alleged ways: (1) she was subjected to an inappropriate comments (which she interpreted as relating to her sexual orientation) by her supervisor, Mr. Hren, which she reported to Merrill Lynch Employee Relations, (2) she was demoted, (3) she was moved so to a different floor, (4) her co-workers became aware that she had complained of (sexual orientation) discrimination which encouraged retaliation and, (5) her employment was terminated. Facts,¶¶ 85, 87; Dkt. 1, 33. Merrill Lynch is entitled to summary judgment on these claims because: (a)  Title VII does not cover sexual orientation claims; and (b)  the doctrines of *res judicata* and collateral estoppel bar Plaintiff from re-litigating her Illinois Human Rights Act ("IHRA") claims here.

1.      **Sexual Orientation-Based Claims Are Not Cognizable Under Title VII.**

Title VII prohibits an employer from discriminating against or harassing an employee "because of [the employee's] <u>sex</u>." *Spearman v. Ford Motor Co.*, 231 F.3d 1080, 1083 (7th Cir. 2000) (emphasis added), citing *Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 78 (1998); 42 U.S.C. §2000e-2(a) (1). The Seventh Circuit has explained that "the phrase in Title VII prohibiting discrimination based on sex" means that "it is unlawful to discriminate against women because they are women and against men because they are men." *Spearman,* 231 F.3d at 1083 (emphasis added) quoting *Ulane v. Eastern Airlines, Inc.* 742 F.2d 1081, 1085 (7th Cir. 1984) (Congress intended the term "sex" to mean "biological male or biological female" – not one's sexuality or sexual orientation).

It is well settled law that discrimination or harassment based on a person's sexual preference or orientation (as opposed to one's gender) is not an unlawful practice under Title VII. *Hamner v. St. Vincent Hosp. and Health Care Center, Inc.,* 224 F.3d 701, 704 (7th Cir. 2000); *Spearman,* 231 F.3d  at 1083-1085  ("Title VII is not a 'general civility code' for the workplace; it does not prohibit harassment in general or of one's homosexuality in particular") (*citations omitted*); *Ulane,* 742 F.2d at 1087 ("We agree . . . that if the term "sex" as is used in Title VII is to mean more than biological male or female, the new definition must come from Congress."). Accordingly, Plaintiff's allegations of discrimination and harassment based on her sexual orientation cannot, as a matter of law, establish a claim under Title VII .

Similarly, Plaintiff's retaliation claim fails because she did not engage in activity protected under Title VII. *Onofrei v. General Security Services Corp.,* 2005 U.S. LEXIS 32716, *24 (N.D. Ill. 2005) ("Engaging in activity protected by Title VII is a required element of a prima facie case of Title VII retaliation. 'Protected activity' must involve either opposition to an

employment practice made unlawful under Title VII, or participation in a charge, investigation, or hearing under Title VII.") (*citations omitted*).  In this case, Plaintiff's retaliation claim is premised solely on her having complained of mistreatment based on her sexual orientation.  But again, as a matter of law, opposing sexual orientation discrimination or harassment is not protected activity under Title VII.  *Hamner,* 224 F.3d at 707-708 (plaintiff's "retaliation claim fails as a matter of law because the conduct he opposed (harassment because of his sexual orientation) is not, under any circumstances, proscribed by Title VII") (*emphasis added*).

As a matter of law, Merrill Lynch cannot be liable for retaliating against Plaintiff for engaging in activity that was not protected under Title VII.  *Hamner,* 224 F.3d at 707 ("If a plaintiff opposed conduct that was not proscribed by Title VII, no matter how frequent or severe, then his sincere belief that he opposed an unlawful practice cannot be reasonable.") citing *Wimmer v. Suffolk County Police Dept.,* 176 F.3d 125, 135 (2nd Cir. 1999).

## 2. Plaintiff's Claims Based on Her Sexual Orientation Have Already Been Litigated and Are Therefore Barred.

Plaintiff's harassment, discrimination and retaliation claims under the IHRA have previously been litigated in, and decided by, the IHRC.  Facts,¶ 90; Ex. E-2.  Consequently, the doctrines of *res judicata* and collateral estoppel bar Plaintiff from re-litigating these claims and the facts allegedly supporting them in this forum.

Under Illinois law, *res judicata* applies when "a final judgment rendered on the merits by a court of competent jurisdiction is conclusive as to the rights of the parties and their privies and, as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand or cause of action." *Torcasso v. Standard Outdoor Sales, Inc.*, 157 Ill.2d 484, 490 (1993).[5]  The

---

[5] Moreover, "where there is identity of parties, subject matter, and cause of action, the doctrine of *res judicata* extends to not only every matter that was actually determined in the prior suit but to every other matter that might have been raised and determined in it." *Torcasso,* 157 Ill.2d at 490 citing *Boddiker v.*

essential elements of *res judicata* are: (1) a final judgment on the merits rendered by a court of competent jurisdiction; (2) identity of causes of action; and (3) identity of parties. *Pirela v. Vill. of N. Aurora,* 935 F.2d 909, 911 (7th Cir. 1991).

All of these elements are satisfied here. In the IHRC proceeding, Plaintiff asserted the same claims of harassment, discrimination and retaliation against Merrill Lynch based on the same core of operative facts (including the exact same alleged "incidents" of harassment and/or retaliation) as she does in this matter. Facts,¶ 85-86; Dkt. 1, 33; Ex. A at 263. After considering the evidence and arguments of the parties on dispositive motions, the IHRC issued findings of fact and conclusions of law supported with legal analysis and citations. *See* Facts, ¶ 90; Ex. E-2. And obviously, the parties to that action are the same as the parties to instant action.

The fact that it was the IHRC and not a court that made the decision does not render the *res judicata* doctrine inapplicable. *Garcia v. Vill. of Mt. Prospect*, 360 F.3d 630, 637 (7th Cir. 2004) (federal causes of action constitute the same cause of action as plaintiff's administrative proceeding if the claims "arise from the same group of operative facts"); *Reed v. AMAX Coal Co.,* 971 F.2d 1295, 1300 (7th Cir. 1992) (IHRC ruling has *res judicata* effect because a "hearing before an [ALJ] and the IHRC [provides the plaintiff] an opportunity to litigate the relevant issues in front of an administrative body acting in a judicial capacity"). Clearly, in this case, Plaintiff has had a fair opportunity to litigate her claims at the IHRC and she is therefore estopped from re-litigating these claims again in this forum.[6]

---

*McPartlin*, 379 Ill. 567 (Ill. 1942). Thus, since the IHRC also had jurisdiction over claims of gender discrimination, Plaintiff's failure to pursue any such claim in that forum precludes her from now trying to litigate such a claim in this forum.

[6]Even *if* Plaintiff were somehow allowed two bites at the apple regarding her IHRA claims for sexual orientation discrimination and retaliation, her claims are due to be dismissed by this Court (just as they were by the IHRC) because the alleged violations occurred before January 1, 2006, when the amendment to the IHRA making "sexual orientation" a protected category, took effect. Ill. P.A. 98-1078, eff. 1-1-06. In other words, prior to January 1, 2006, it was <u>not</u> a violation of the IHRA to discriminate or harass

Similarly, the doctrine of collateral estoppel bars Plaintiff from trying to re-litigate the same operative facts underlying her IHRC claims in this case. As the Seventh Circuit has explained, "[w]hen a state agency acting in a judicial capacity resolves disputed issues of fact properly before it which the parties have had adequate opportunity to litigate, federal courts must give the agency's fact finding the same preclusive effect to which it would be entitled in the State's courts." *Goodwin v. Bd. of Trustees of the Univ. of Ill.,* 442 F.3d 611, 620 (7th Cir. 2006). "To preclude parties from contesting matters they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Teague v. Mayo,* 553 F.3d 1068, 1073 (7th Cir. 2009), citing *Montana v. United States,* 440 U.S. 147, 153 (1979).

Illinois law gives collateral estoppel effect to judgments issued by an agency (1) acting in a judicial capacity, (2) resolving disputed issues of fact before it, (3) if the parties have had opportunity to litigate these issues. *Reed,* 971 F.2d at 1300. An administrative agency acts in a judicial capacity if the following safeguards are present: (1) representation by counsel, (2) pretrial discovery, (3) the opportunity to present memoranda of law, (4) examinations and cross-examinations, (5) the opportunity to introduce exhibits, (6) the chance to object to evidence, and (7) final findings of fact and conclusions of law. *Id.*

---

against an employee based on his/her sexual orientation or to retaliate against an employee based on complaints of the same. *In the Matter of the Request for Review by Wilfredo Busher,* 2005 WL 4260288 (Ill. Dept. Hum. Rts. 2005) ("'sexual orientation' was not a basis covered under the Act at the time of Respondent's alleged conduct, and [the Amendment] does not have retroactive application."). *See also, In the Matter of W. Eric Sprinkle,* 2000 ILHUM LEXIS 126, *27-28 (IHRC 2000) ("the [IHRA] does not prohibit discrimination based on sexual orientation."); *In the Matter of the Request for Review by Jess Evans,* 1997 ILHUM LEXIS 285, *4 (IHRC 1997) ("We agree with the Department of Human Rights that sexual orientation is not a covered basis under the [IHRA]"); *see also* IHRC Decision. Consequently, Plaintiff cannot establish a viable cause of action under the IHRA.

Here, all necessary safeguards were present. In the IHRC proceedings, Plaintiff was represented by counsel, the parties engaged in months of active discovery (including the opportunity for depositions, Plaintiff submitted briefs in opposition to Merrill Lynch's dispositive motion, she had the opportunity to present and object to evidence, and the ALJ issued final findings of fact and conclusions of law as part of its decision. *See* Facts, ¶ 90; Ex. E-2. Plaintiff also had the right to judicial review of the ALJ's decision, but she chose not to appeal. Consequently, the IHRC's Order and Decision dismissal is final,[7] and it bars Plaintiff from re-litigating her harassment, discrimination and retaliation claims in this Court.

## C.   PLAINTIFF CANNOT NOW RECAST THE SAME CHALLENGED EVENTS AS GENDER DISCRIMINATION, RATHER THAN SEXUAL ORIENTATION DISCRIMINATION.

Plaintiff has gone on record in numerous ways to explain the alleged factual basis for their claims. Each and every time, her story has been the same—it was her sexual orientation that led to the actions she challenges. Given this consistent factual position, Plaintiff should not now be permitted, on the basis of vague, amorphous language in her Complaint, to suddenly manufacture entirely new claims of discrimination, harassment or retaliation on the basis of gender. Not only does *res judicata* bar any such attempt (as discussed in footnote 5), Plaintiff is also estopped by her own prior sworn testimony, the stipulations of her counsel, and her failure to exhaust administrative remedies as to any such claim. To allow Plaintiff to re-invent her claims under a different theory (especially now that she has received an adverse ruling in the IHRC proceeding) would make a mockery of both proceedings and encourage plaintiffs to litigate the same events in multiple forums to essentially gain two bites at the apple.

---

[7] According to the IHRC's procedural Rules, "The failure to file exceptions to a Recommended Order and Decision shall constitute a waiver of any arguments which could have been made to a Commission Panel. A party who fails to file exceptions shall be deemed to have failed to exhaust administrative remedies." ILL. ADMIN. CODE tit. 56, § 5300.910.

1. **Plaintiff Has Consistently Testified That the Challenged Acts Were Because of Her Sexual Orientation – Not Her Gender.**

In her sworn testimony in both the IHRC matter and this federal case, Plaintiff has repeatedly and unequivocally confirmed that her harassment, discrimination, retaliation claims are identical in both forums and are premised <u>solely on her sexual orientation</u> (as opposed to her gender). In fact, during Plaintiff's November 28, 2007 deposition in the IHRC matter, Plaintiff and her prior attorney, Scott Skaletsky, specifically <u>stipulated</u> to the same—<u>on the record</u>:

> Q:     I understand you're saying [Lou Buttny] did things that indicated that he hated you?
>
> A:     Because I was gay. Lou Buttny liked to promote white men who were married and had children.
>
> MS. MILLER: I can ask you, Scott, or her; but I do need to get clear on this. The discrimination that she is alleging is based on – it says based on sex. I am interpreting that as based on sexual orientation because it says I am a lesbian right after that.
>
> MR. SKALETSKY: Yes.
>
> MS. MILLER: Okay. <u>I just want to make sure we are talking about sexual orientation and not gender.</u>
>
> MR. SKALETSKY: <u>Correct. Yes. It's because Mary is a lesbian.</u>
>
> MS. MILLER: That's what I thought.
>
> MR. SKALETSKY: <u>That's what gives rise to the discrimination.</u>

Ex. A to Defendant's Evidentiary Submission ("Pl. Dep. II") at 5, 11 and Ex. 58 at 207 (emphasis added); *see also id.* at 351-352 (plaintiff admits she told the EEOC the alleged behavior was because she was a lesbian).

Further, Plaintiff's testimony regarding her claims in *this* case also confirms that her claims in both forums were identical and based solely on her sexual orientation:

> Q:     So if there's anything, any other mistreatment or misconduct that you weren't complaining about in the Illinois

10

> Human Rights proceeding that you're complaining about in this proceeding, then I want us to be able to discuss it. So are you aware of anything that you weren't complaining about in that proceeding that you're now complaining about in this proceeding?
>
> [Objections omitted]
>
> A:     Not that I'm aware of.

Pl. Dep. II at 263; *see also,* Facts, ¶ 86; E-2 at ¶¶ 16,19; Dkt. 44, ¶26; Pl. Dep. II at 162-163, 256-260, 263-264, 268-271, 319.

It is undisputed that Plaintiff's complaints to Merrill Lynch's Employment Relations department in summer of 2005 were that she had been subjected to harassment based on her sexual orientation – not because she was a female. Pl. Dep. II at 162-163, 263-264, 256-260, 268-271, 319 and Ex. 58 at 207, 351-352. Indeed, Plaintiff never complained (and does not claim to have complained) to Merrill Lynch about any alleged gender-based harassment or discrimination during her employment. Nor did she assert gender-based claims in any of her EEOC/IHRC charges. Thus, any alleged retaliatory acts cannot be premised on (non-existent) gender-based complaints. Further evidencing this is the fact that the employment acts Plaintiff challenges in this federal proceeding are identical to those challenged before the IHRC, including her final termination which she clearly testified was in alleged retaliation for her complaint of sexual orientation harassment. Pl. Dep. II at 263, 270-271.

**2.     Plaintiff Did Not Exhaust Her Administrative Remedies With Regard to Gender Discrimination.**

"[A] plaintiff may not bring claims under Title VII that were not [ ] included in the charges made to the EEOC." *Sitar v. Indiana Dept. of Transportation,* 344 F.3d 720, 726 (7th Cir. 2003), *citing Vela v. Village or Sauk Jewel Food Co.,* 218 F.3d 661, 664 (7th Cir. 2000). To the extent that Plaintiff should attempt to recast any of her allegations as based on her gender

(instead of sexual orientation), her effort would fail because she did not assert any such claim with the EEOC or Illinois Department of Human Rights ("IDHR"), as required. 42 U.S.C. § 2000e - 5(e).

In all of Plaintiff's underlying EEOC/IDHR Charges against Merrill Lynch regarding complaints related to her employment, she asserted that her <u>sexual orientation</u> (not gender) was the basis of the alleged discrimination and retaliation. Facts ¶¶ 79, 82, 86. Indeed, the EEOC expressly so concluded and dismissed her charge on that basis. An EEOC investigation memorandum states as follows: "[Charging Party] states that her interpretation of these comments and gestures were harassment based on her sexual orientation. Lack of jurisdiction."). Facts,¶ 88, Ex. E-6.

In light of all of the foregoing, any attempt by Plaintiff to relitigate the same events cloaked as a different form of discrimination should be rejected by the Court as a matter of law.[8]

**D.    PLAINTIFF'S CLAIMS AGAINST MERRILL LYNCH OVER A DISCRETIONARY BONUS FAIL AS A MATTER OF LAW.**

Plaintiff's claims for unpaid wages under the Illinois Wage Payment and Collection Act (" IWPCA"), breach of contract, and *quantum meruit* are all based on a discretionary bonus

---

[8]Even if Plaintiff were somehow allowed to transform her sexual orientation harassment, discrimination and retaliation allegations into gender claims (which she cannot), and even if they were not barred by her failure to exhaust her administrative remedies (which they are), Merrill Lynch would still be entitled to summary judgment on all these claims as Plaintiff cannot establish any of the following required elements: (1) the alleged harassment/discrimination was severe and pervasive in that it altered the terms and conditions of her employment; (2) that she was treated less favorably than similarly situated male employees, (3) she engaged in protected activity, (4) that she suffered a material adverse action caused by her complaints, or (5) that Merrill Lynch's legitimate, non-discriminatory business reasons are pretext for unlawful discrimination and/or retaliation. *Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 465 (7th Cir. 2002) (detailing prima facie elements of Title VII retaliation case under the indirect methods of proving retaliation); *Haywood v. Lucent Techs., Inc.*, 323 F.3d 524, 531 (7th Cir. 2003). Furthermore, even *if* she could get past all these obstacles and somehow establish harassment, discrimination or retaliation under Title VII, Merrill Lynch can satisfy the *Faragher/Ellerth* affirmative defense (*Faragher v. Boca Raton,* 524 U.S. 775, 807 (1998)), because Plaintiff admits that if she had reported the individuals who allegedly harassed and/or retaliated against her, Merrill Lynch would have fired them because of its "zero tolerance" policy. Facts, ¶ 31.

which Merrill Lynch mistakenly deposited into, and later withdrew from, Plaintiff's bank account while she was on administrative leave pending discharge. Pl. Dep. II at 273-274, 285, 289-290, Ex. 65. Plaintiff readily admits that this bonus was discretionary and in no way guaranteed. Pl. Dep. II at 69, Ex. 58 at 149. Additionally, it is undisputed that in order to be eligible for a discretionary bonus, the employee has to be in good standing on the payment date. Facts, ¶ 74; Ex. D to Defendants' Evidentiary Submission ("Roesch Dep.") at 10. Since Plaintiff was clearly not in good standing while she was on administrative leave pending discharge, she was not eligible to receive a bonus. *Id.* Consequently, when Merrill Lynch realized that the discretionary bonus had been mistakenly deposited into Plaintiff's account, it immediately corrected the error — as it had a right to do. *Id.* For the reasons set forth below, all of Plaintiff's claims premised on this discretionary bonus fail as a matter of law.

### 1. Plaintiff Has No Claim Under the Illinois Wage Payment and Collection Act.

The IWPCA provides that:

> "[W]ages" shall be defined as compensation owed an employee by an employer pursuant to an employment *contract or agreement* between the two parties, whether the amount is determined on a time, task, piece, or any other basis of calculation. Payments to separated employees shall be termed as "final compensation" and shall be defined as wages, salaries, earned commissions, earned bonuses, and the monetary equivalent of earned vacation and earned holidays, and any other compensation owed the employee by the employer pursuant to an employment *contract or agreement* between the two parties.

820 ILCS 115/2 (*emphasis added*). Clearly, the act does not confer any recovery absent a contractual right. The Illinois Department of Labor regulations, issued pursuant to the IWPCA, reiterate the requirement of an underlying contractual agreement in order for a claim for earned bonuses upon separation to be cognizable: "[a] claim for an earned bonus arises when an employee performs the requirements for a bonus set forth in a contract or an agreement between the parties" or when a bonus is "earned by length of service…when the employment relationship

was terminated by mutual consent of the parties or by an act of the employer <u>through no fault of the former employee</u>." ILL. ADMIN. CODE, tit. 56, § 300.500 (2008) (emphasis added); *see also, Byker v. Sequent Computer Sys., Inc.,* 1997 WL 639045 (N.D.Ill. Oct. 1, 1997) (awarding summary judgment for claim of earned bonus to employer in absence of an enforceable contractual right to bonus commissions). Here, Plaintiff admits that the bonus was discretionary (*i.e.,* not based on tenure or length of service) and that she did not have an employment contract or agreement with Merrill Lynch.[9] Pl. Dep. II at 68-69, 285, 289. Plaintiff testified as follows:

> Q: Paragraph 133: Defendants failed to pay all promised compensation as alleged elsewhere in this complaint. Is that a reference to the discretionary bonus that you did not receive?
>
> [Objection omitted]
>
> A: Yes.
>
> Q: Did you have any oral or written agreement with Merrill Lynch with regard to the payment of this discretionary year-end bonus?
>
> [Objection omitted]
>
> A: No.

Pl. Dep. II at 289.

> Q: Are you aware of anything in writing that guaranteed you that bonus at year end?
>
> A: No, there's no documents.
>
> Q: Was there anything in writing that guaranteed whether you would be given the bonus or how much it would be?
>
> [Objection omitted]
>
> A: I was given the bonus and it was taken back. So there was no – no, there was nothing guaranteed.

---

[9] Moreover, Plaintiff admits that she did not perform any work for Merrill Lynch for which she was not paid. Ex. A, Pl. Dep. II at 285.

14

*Id.* at 69.   In sum, because the discretionary bonus does not constitute either "wages" or an "earned bonus" as defined by the IWPCA and there was no employment contract or agreement between Merrill Lynch regarding a bonus (or for any other reason), Merrill Lynch is clearly entitled to summary judgment on this claim.

### 2.   Plaintiff's Breach of Contract Claim Fails as a Matter of Law.

Plaintiff alleges that she and Merrill Lynch "entered into oral and/or written employment contracts" and that Merrill Lynch breached these alleged contracts by failing to pay Plaintiff all of her compensation. Dkt. 44, ¶¶ 131-136.   In order to establish a viable breach of contract claim (either oral or written), it is axiomatic that the Plaintiff must establish the existence of a legal contract between the parties. *Roberts v. Adkins,* 921 N.E.2d 802, 810 (Ill. App. Ct. 2010); *Henderson-Smith & Assoc., Inc. v. Nahamani Family Service Ctr., Inc.*, 323 Ill.App.3d 15, 27 (Ill. App. Ct. 2001).   However, Plaintiff admitted under oath that no oral or written contract existed between Merrill Lynch and Plaintiff.   She testified:

> Q:   Miss Carroll, did you have any contract or agreement between you and Merrill Lynch?
>
> A:   No.

Pl. Dep. II at 68-69.

> Q:   . . ..  are you aware of any written or oral contract that you had with Merrill Lynch that they breached?
>
> [Objections omitted]
>
> A:   No.
>
> Q:   Paragraph 132 says, "Plaintiff and defendants entered into oral and/or written employment contracts." Do you see that?
>
> A:   Yes.
>
> Q:   Are you aware of any oral or written employment contracts you entered into with Merrill Lynch?

15

[Objections omitted]

A:    No.

*Id.* at 288; *see also, id.* at 286.

Since it is abundantly clear that no written or oral contract existed, as a matter of law, Plaintiff cannot establish a claim for breach of contract and, consequently, Merrill Lynch is due summary judgment on this claim. *Nat'l Inspection & Repairs, Inc. v. George S. May International Co.,* 2010 WL 1407791, *6 (7th Cir. Apr. 9, 2010) ("Although we must and do consider all inferences in favor of [plaintiff], we will not manufacture contractual obligations that are not found fairly in the text of the agreement or that simply do not exist.").

### 3.    Plaintiff Cannot Establish A *Quantum Meruit* Claim.

Plaintiff's *quantum meruit* claim based on the discretionary bonus is also without merit. *Quantum meruit* "describes the extent of liability on a contract implied by law, and is predicated on the reasonable value of the services performed; the basis of which is the receipt by a defendant from a plaintiff of a benefit which is unjust for him to retain without paying for it." *Krieger v. Adler, Kaplan & Begy,* 1997 WL 323827 (N.D. Ill. June 11, 1997) *citing Paradise v. Augustana Hosp. & Health Care Ctr.,* Ill. Dec. 147, 150 (Ill. App. Ct. 1991). To be successful on a claim under *quantum meruit*, a party must prove performance of the services, reasonable value of the services, and a benefit received by the defendant without paying the complaining party. *Industrial Specialty Chemicals v. Cummins Engine Co*., 918 F.Supp. 1173, 1179 (N.D. Ill. 1996). Here, Plaintiff concedes that she is not making a claim regarding hours worked or services performed for which she was not paid:

Q:    Are you making any claims that you were denied wages that you earned other than this bonus?

A:    No.

16

> Q:      Did you earn any compensation from Merrill Lynch that you were not paid other than this bonus?
>
> A:      No.

Pl. Dep. II at 285.  Plaintiff further concedes that she is not asserting that she provided work or services to Merrill Lynch for which she was not paid:

> Q:      The next page says, Fourth Claim for Relief *Quantum meruit*.  It says that, Plaintiff performed services for defendants, thereby conferring a benefit upon defendants of the value of said services.  It would be unjust to allow the defendant to retain the benefit of said services thereby enriching them without compensating the plaintiff. Are you aware of any services that you performed for Merrill Lynch that you were not compensated for?
>
> A:      No.

*Id. at* 289-290.  Instead, Plaintiff's *quantum meruit* claim is premised solely on the discretionary bonus discussed above.  Pl. Dep. II at 285.  Having conceded that the bonus was discretionary in nature, as opposed to payment for services performed, Plaintiff's claim for *quantum meruit* is fatally flawed, and Merrill Lynch is entitled to summary judgment on this claim. *See Hunter v. Deutsche Bank AG,* 866 N.Y.S.2d 270 (N.Y. App. Div. 2008) (rejecting employee's claim of *quantum meruit* based on discretionary bonus).

**E.      PLAINTIFF'S CLAIM AGAINST MERRILL LYNCH FOR TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS IS MERITLESS.**

Plaintiff's tortious interference claim is based on her allegation that she did not get a job with a company called Trading Services, LLC (which allegedly occupied the same building as Merrill Lynch did), because she had been banned from the building and because of comments made by an "unknown Merrill Representative." Dkt. 44, ¶¶ 75-85.  However, when questioned about her claim, Plaintiff testified as follows:

> Q:      If you look at page 27 of your amended complaint, it says Eighth claim for relief, tortious interference with contractual

relations against Merrill Lynch. Miss Carroll, what contract are you claiming that Merrill Lynch tortiously interfered with?

[Objections omitted]

A:     My job.

Q:     You're talking about your job with Merrill Lynch?

A:     Yes.

Q:     And you did not have a contract with regard to that job, correct?

A:     No.

Q:     Did you have a contract with anyone that Merrill Lynch interfered with?

[Objections omitted]

A:     No.

Q:     Are you aware of any contract that you had, say, since 2005 with any third party?

[Objection omitted]

A:     No.

Q:     Have you produced any contract in this case that you're claiming was interfered with by Merrill Lynch?

A:     I can't think of any right now.

Q:     And your testimony is you're not aware of any contracts that you had with anyone?

[Objection omitted]

Q:     That's correct?

[Objection omitted]

Q:     Is that correct?

A:     Yes.

Ex. A, Pl. Dep. II at 317-318.

Plaintiff's claim fails for several reasons. First, Plaintiff concedes she did not have a contract with Merrill Lynch. Further, even if a contract between the two existed, "[i]t is undisputable that a party cannot tortiously interfere with its own contract." *IK Corp. v. One Financial Place Partner*, 558 N.E.2d 161, 172 (Ill. App. Ct. 1990). *Quist v. Board of Trustees of Community College Dist. No. 525,* 629 N.E.2d 807, 821 (Ill. App. Ct. 1994); *Knickman II v. Midland Risk Services-Ill., Inc*., 700 N.E.2d 458, 462 (Ill. App. Ct. 1998) ("To be tortious, the interference must come from an entity not a party to the contract.").

Second, even putting aside Plaintiff's own testimony about her tortious interference claim, and considering only the allegations crafted by counsel in her Second Amended Complaint, these allegations cannot establish a tortious inference claim against Merrill Lynch.

To prove tortious interference under Illinois law, Plaintiff must show: 1) her reasonable expectancy of entering into a valid business relationship; 2) Defendant's knowledge of that expectancy; 3) Defendant's intentional and unjustifiable interference that induced or caused breach or termination of the expectancy, and; 4) damage to Plaintiff resulting from Defendant's conduct. *See Kikson v. Underwriters Laboratories, Inc.,* 492 F.3d 794 (7th Cir. 2007).

Plaintiff's Second Amended Complaint contends that Merrill Lynch tortiously interfered with a job offer Plaintiff had received from Trading Services, LLC because an "unknown Merrill Representative" allegedly said to someone at Trading Services that Plaintiff was "bad news" and to "steer clear of her" and because Merrill Lynch had Plaintiff banned from the building. Dkt. 44 at ¶¶ 75-85. Other than these bald, unsupported allegations, Plaintiff has produced absolutely no information confirming the existence of this alleged company (Trading Services LLC), nor any evidence of the alleged offer of employment. Facts,¶ 80; Ex. E-7. (Oct. 5, 2007 letter from Plaintiff's counsel stating in relevant part: "We have made numerous attempts to locate Trading

Services LLC, however they have turned up unsuccessful. We are continuing our attempts and will supplement this response as soon as we obtain current information.").

It is fundamental that in order to survive summary judgment a Plaintiff must present definite and competent evidence in support of her claims. *Warsco v. Preferred Technical Group,* 258 F.3d 557, 563 (7th Cir. 2001) ("The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence."). Having failed to provide *any* evidence supporting her claim of tortious interference with contractual relations, Merrill Lynch is entitled to summary judgment on this claim.

Even assuming, *arguendo,* that both Trading Services, LLC and the offer of employment ever existed (and there was evidence thereof), Plaintiff testified that being banned from the building did not prevent her opportunity with this prospective employer. Facts ¶ 81. Further, as soon as department director, Walter Roesch, was informed that Plaintiff was allegedly trying to get a job with another company in the building, he immediately had the ban lifted. Facts, ¶ 79; Roesch Dep. at 122 and Ex. 55. Prior to receiving this notice, Merrill Lynch did not know Plaintiff was applying for a job in the building, nor is there any evidence that it banned Plaintiff from the building with the intention of interfering with this alleged job opportunity. Facts, ¶ 79.

This leaves Plaintiff's allegation that some (unidentified) person with Merrill Lynch told "Chris" (last name unknown) with Trading Services (which cannot be located) that he should "steer clear" of Plaintiff — which purportedly caused the alleged job opportunity not to come to fruition. Pl. Dep. II at 244-249. This assertion is simply insufficient to be actionable. Again, Plaintiff has failed to produce any evidence supporting the *existence* of Trading Services, LLC, "Chris" or the unidentified person at Merrill Lynch who allegedly made the comment. *Warsco,*

258 F.3d at 563 (mere allegations without any supporting evidence are insufficient to either establish a cause of action or defeat summary judgment); *Chemsource, Inc. v. Hub Group, Inc.*, 106 F.3d 1358, 1361 (7th Cir. 1997) (same).  Lacking *any evidence* to support Plaintiff's claim for tortious interference, Merrill Lynch is due summary judgment on this claim.

## F.  DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S EAVESDROPPING CLAIMS.

Plaintiff contends that Merrill Lynch and the Kellihers violated the IEA based on the recording and limited replaying of a portion of Plaintiff's threatening phone call to the Kellihers' home late on Thanksgiving night of 2005. Dkt 44, ¶¶ 151-163.  The undisputed facts are that Mrs. Kelliher recorded a portion of the phone call on her home answering machine out of fear and concern for her family's safety and well-being.  Facts,¶¶ 50-51.  Mr. Kelliher reported the incident at work, and Mrs. Kelliher then played the recording for Merrill Lynch supervisors who were investigating Mr. Kelliher's report.  Facts,¶¶ 55-60.  The recording was played onto a recorded line at Merrill Lynch so that management officials (who were not available for Mrs. Kelliher's initial playing) could later review evidence of the threatening phone call, if necessary. Facts ¶ 61.  Mr. Kelliher also made a copy of the recorded portion of the phone call onto a cassette tape for the sole purpose of filing a police report.  Facts,¶ 64.

The IEA provides that a person commits eavesdropping when he or she:

(1) Knowingly and intentionally uses an eavesdropping device for the purpose of hearing or recording all or any part of any conversation or intercepts, retains, or transcribes electronic communication unless he does so (A) with the consent of all of the parties to such conversation or electronic communication, or…

(3) Uses or divulges…any information which he knows or reasonably should know was obtained through the use of an eavesdropping device.

720 ILCS 5/14-1 a(1) and (3).  The IEA also contains multiple exemptions, and <u>specifically excludes</u> recordings "made under the <u>reasonable suspicion that another party to the conversation</u>

is committing, is about to commit, or has committed a criminal offense against the person or a member of his or her immediate household, and there is a reason to believe that evidence of the criminal offense may be obtained by the recording." 720 ILCS 5/14-3(i) (*emphasis added*).

    **1.**    **Plaintiff's Eavesdropping Claim Against Mrs. Kelliher Fails.**

As set forth above, the IEA does not apply if a recording is made under the reasonable suspicion that a party to the conversation is committing or is about to commit an offense against a party or a member of the party's family. 720 ILCS 5/14-3(i).  Additionally, with regard to this exemption, courts have held that "no consent is required if the eavesdropper is recording a conversation concerning a crime directed at a family member of the eavesdropper." *Cox v. Bigler*, 2006 U.S.Dist. LEXIS 65007, *9 (S.D. Ill. Sept. 12, 2006).  Here, it is undisputed that while at home late Thanksgiving evening, the Kellihers received a threatening phone call from Plaintiff. Facts,¶¶ 47-49  Standing in her living room, Mrs. Kelliher could hear Plaintiff (on the other end of the phone) yelling and cursing at her husband who seemed entirely perplexed by the call. Facts,¶¶ 50-51.  Based on the volume, tone, and tenor of Plaintiff's voice, Mrs. Kelliher became extremely concerned and went upstairs to listen to the call on another phone.  *Id.* Shortly after picking up the extension, Mrs. Kelliher became increasingly concerned about Plaintiff's intentions and reasonably believed that her husband and/or her family might be in danger. *Id.*  Consequently, Mrs. Kelliher pressed "record" on the family's answering machine and recorded a portion of the conversation for the purpose of preserving it to demonstrate Plaintiff's threatening and unprovoked behavior. *Id.*  Mrs. Kelliher testified as follows:

        Q:    At some point you recorded Mary Carroll's voice and Mr. Kelliher's voice, correct?

        A:    Yes.

        Q:    How did you do that?

A:     We have an answering machine, and there is an option on there to record it and I hit whatever option that was.

Q:     Why did you do that?

A:     Because I was scared.   You know, it was late on Thanksgiving night.  It was past 9:00 o'clock at night.  There's somebody on the other end yelling at my husband and using profanity, and I hear my husband saying, "I don't know what you're talking about."  "Can you please explain?"  I hear him, you know, in a calm voice.  I hear an escalation in the voice of the person who was calling.  I had no clue who this person was.  I got scared that somebody was very angry for an unknown reason that I could tell in the part that I listened to, and I felt that, you know, this person was going to come to our house, throw a brick through our window, that they were going to do something that night.  And I got scared.  And I wanted – that if we had to involve the police that I could say "You know what?  This person, I don't know who they are, but this is what's scaring me."

Ex. B to Defendants' Evidentiary Submission  ("P. Kelliher Dep.") at  40-41; *see also id.* at 43-45, 59-63.  In fact, the Kellihers were so concerned about what Plaintiff might do, that they decided go to the police the following day. Facts,¶ 64.

Plaintiff has admitted under oath that during this call, she was "dramatic," "all riled up," "enraged," acting "inappropriately" and "irrationally," and had "f_cking snapped."  Facts,¶ 48.  Plaintiff also admits that during the call she was yelling, using profanity and threatening Mr. Kelliher with losing his job and that, based on her behavior during the call, it was reasonable for Mr. Kelliher to feel threatened. *Id.*

The one and only time Mrs. Kelliher played the recording of Plaintiff's threatening call (for anyone other than her husband who was a party to the call) was the following day when she received a call from Mr. Kelliher, who was joined by his supervisor, Liz Creek, and Mr. Roesch . Facts,¶¶ 60-61.  At Mr. Roesch's request and with the understanding that management would address Plaintiff's inappropriate and threatening behavior, Mrs. Kelliher played the recording on the phone line. *Id.*

Clearly, Mrs. Kelliher's reasonable fear for her family's safety and well-being brings her recording of Plaintiff's inappropriate and threatening phone call within the IEA exemption detailed in 720 ILCS 5/14/3(i).[10]  Indeed, two months later when Plaintiff filed a police report against the Kellihers for recording her Thanksgiving night call, the State's Attorney's office refused to prosecute Plaintiff's eavesdropping charge because it determined, under the circumstances, the recording was exempt from IEA. Facts, ¶ 71.  Mrs. Kelliher is clearly entitled to judgment as a matter of law on this claim.

### 2.    Plaintiff's Eavesdropping Claim Against Mr. Kelliher Fails.

The only recording Jim Kelliher made of Plaintiff's threatening, Thanksgiving-night phone call to his home was when he copied the recorded call off his home digital answering machine onto a handheld tape-recorder for the sole purpose of filing a police report, to put the police on notice in case Plaintiff tried to harm him or his family.  Facts,¶ 64.  He did in fact then play it for the police.  *Id.*

Mr. Kelliher's recording and replaying of Plaintiff's threatening phone call for the police falls outside the scope of the IEA, as it was clearly done with the concern that Plaintiff had either committed, or was going to commit, an offense against him or his family, and in an effort to provide the police with an accurate account of the threatening call. 720 ILCS 5/14-3(i).   Again, the State Attorney's office declined to prosecute the charges Plaintiff filed against the Kellihers

---

[10] In fact, due to the nature of Plaintiff's call, Mrs. Kelliher continues to harbor a level of fear for her safety:

Q:    So did you continue to have this fear that violence would occur based on what you recorded? (Objections omitted).
A:    I have a level of fear still, yes.
Q:    Still?
A:    Still.
Q:    You think Mary Carroll is going to jump across this table and hurt you?
A:    I don't know what she's capable of.

P. Kelliher Dep. at 88-89.

for eavesdropping because the circumstances the Kellihers' actions were excluded by 720 ILCS 5/14-3(i). Facts, ¶ 71. Consequently, Mr. Kelliher is due summary judgment on this claim.

### 3. Plaintiff's Eavesdropping Claim Against Merrill Lynch Fails.

To the extent that Plaintiff alleges that Merrill Lynch violated the IEA by having Mrs. Kelliher play the recorded portion of the call during a recorded conference call with managers, or by making that recording to select members of management who were unable to attend the initial conference call, her claim also fails.[11] The original recording made by Mrs. Kelliher was done under the reasonable suspicion that Plaintiff was going to commit an offense against her or her family, and therefore (as previously discussed), that recording is not illegal under the IEA. P. Kelliher Dep. at 40-42. Consequently, since the original recording was within the scope of the IEA – thus, not an "illegal recording" – subsequent replays of that same recording are not "illegal" under the IEA. Moreover, in this case, the only reason Merrill Lynch was made privy to the recorded call, was to evaluate a report from one of its supervisors that an employee had made a threatening and inappropriate call to his home.[12] Roesch Dep. at 83-84, 88-89. The recording was not shared outside of management for Plaintiff's department and was not used for any purpose other than to corroborate Mr. Kelliher's report regarding the threatening call. *Id.* at

---

[11] Arguably, the IEA is not even applicable here because New Jersey law, as opposed to Illinois law should apply to Merrill Lynch's recording. The recorded line was in New Jersey and that is where Mr. Roesch originated the November 25th conference call. Facts, ¶ 60,Roesch Dep. at 84-85, 88-89. For eavesdropping purposes, New Jersey is a one-party consent state. N.J. Stat. §2A:156A-3,-4. In other words, under New Jersey law, as long as one party to the conversation consented to the recording and replaying of the call, then no violation occurred. *Id.* Here, Mr. Kelliher, who was a party to Plaintiff's threatening phone call, consented to the re-playing and recording of his call with Plaintiff by Merrill Lynch management - thus, there was no eavesdropping violation under New Jersey law.

[12] Contrary to Plaintiff's assertion, there is absolutely no support for the contention that Merrill Lynch is vicariously liable for having made the original recording based on the doctrine of *respondeat superior*. First, Mr. Kelliher did not make (or cause) the original recording. Mrs. Kelliher (who has never been a Merrill Lynch employee) did. P. Kelliher Dep. at 37, 40-42. Second, Mr. Kelliher copied the recording for the sole purpose of filing a police report, and he did so at home, on his own accord – not at the direction of Merrill Lynch. Facts, ¶ 64, P. Kelliher Dep. at 80-81; Ex. C to Defendant's Evidentiary Submission ("J. Kelliher Dep.") at 9-10.

91-94. Merrill Lynch's limited review of a legally created recording plainly does not give rise to a cause of action for eavesdropping under the IEA.[13]

## G.    PLAINTIFF'S CLAIMS OF INTRUSION INTO SECLUSION ARE MERITLESS.

To establish a claim for intrusion into seclusion, Plaintiff must show the following:  1) a defendant, without authorization, must have intentionally invaded her private affairs; 2) the invasion must be offensive or objectionable to a reasonable person; 3) the matter that the defendant intruded upon must involve a private matter; and 4) the intrusion must have caused mental anguish or suffering to the plaintiff. [14]  *Burns v. Masterbrand Cabinets, Inc*., 874 N.E.2d 72, 75-77 (Ill. App. Ct. 2007); *see also, Restatement (Second) of Torts* §652B, at 378 (1977). "The core of this tort is the offense of prying into the private domain of another." *Lovegren v. Citizens First Nat'l Bank of Princeton*, 534 N.E.2d 987, 989 (Ill. App. Ct. 1989).  In this case, Plaintiff fails to establish a claim of intrusion into seclusion against any of the Defendants.

### 1.    Plaintiff's Intrusion Into Seclusion Claims Against the Kellihers Fail As a Matter of Law.

Plaintiff's most ironic (and audacious) claim in this lawsuit is that *the Kellihers* invaded *her* privacy when Mrs. Kelliher recorded a portion of the threatening phone call Plaintiff made to the Kellihers' home late Thanksgiving night of 2005.  Facts,¶¶ 47-49. The very notion that an unsuspecting family, sitting at home together on Thanksgiving night, can somehow intrude into the seclusion of someone who calls their house at an inappropriate hour, yelling, cursing, and

---

[13] Even if playing the original recording on a recorded conference line could somehow be interpreted as a violation of the IEA, Plaintiff was not damaged by this subsequent recording and playing.  Mr. Roesch testified that even without the recording, based on Mr. Kelliher's report of the phone call, and in light of Plaintiff's other erratic behavior, he would have terminated Plaintiff.  Roesch Dep. at 133.

[14] Since the Illinois Supreme Court has never officially recognized intrusion into seclusion as a viable cause of action, Defendants do not concede that such action exists. *Lovegren v. Citizens First Nat'l Bank,* 126 Ill.2d 411, 417 (Ill. 1989) ("We emphasize that our discussion of the tort of unreasonable intrusion into the seclusion of another, as enunciated by the Restatement and by Prosser, does not imply a recognition by this court of such a cause of action."). However, to the extent the tort is actionable in Illinois, Plaintiff's claims fail as a matter of law for the reasons set forth herein.

making threatening remarks is nothing short of ridiculous. If anyone's private domain was intruded upon, it was clearly that of the Kellihers – not Plaintiff.

Additionally, there is absolutely no evidence that either Mr. or Mrs. Kelliher intentionally "invaded the private affairs" of Plaintiff by recording a portion of the threatening phone call. *Acosta v. Scott Labor LLC,* 377 F.Supp.2d 647, 650 (N.D. Ill. 2005) ("If plaintiff does not allege private facts, the other three elements of the tort need not be reached.") (*citations omitted*). In fact, Plaintiff admits that there was nothing personal or private revealed in the portion of the conversation Mrs. Kelliher recorded. Pl. Dep. II 296-297.

Furthermore, Plaintiff cannot establish – as she must – that she attempted to keep any personal facts revealed private. *Acosta,* 377 F.Supp. 2d at 650 citing *Vega-Rodriguez v. Puerto Rica Telephone Co.,* 110 F.3d 174, 181 (1st Cir. 1997) ("Persons cannot reasonably maintain an expectation of privacy in that which they display openly."). Here, the day after the Thanksgiving call, Plaintiff told several co-workers about her call and later posted details about it on the Internet. Pl. Dep. II at 266-267, 296-297, Exs. 25, 45. Plaintiff testified that after making the call, she did not care who in Merrill Lynch management knew about the call. Pl. Dep. II at 192-193, 194-195, 196-197, 199, Ex. 44. Clearly, neither Plaintiff's phone call, nor the matters discussed therein concerned "private affairs" which she tried to keep private.

Nor would the alleged intrusion – the recording of Plaintiff's threatening Thanksgiving night phone call – be considered offensive or objectionable to a reasonable person. *Russell v. American Broadcasting Co., Inc.,* 1995 U.S. LEXIS 7528 (N.D. Ill. May 30, 1995) (plaintiff's allegation that defendant "secretly recorded a conversation she willingly had with a co-worker at her place of business" was "hardly 'offensive prying into the private domain of another'"); *Desnick v. ABC, Inc.,* 44 F.3d 1345, 1353 (7th Cir. 1995) (the secret recording of conversations

between the plaintiff and the test patients did not intrude on plaintiff's right to privacy); *Miller v. Motorola, Inc.*, 202 Ill. App. 3d 976, 560 N.E.2d 900, 904 (Ill. App. Ct. 1990) (disseminating information that plaintiff voluntarily provided to defendant did not constitute an unreasonable intrusion into the seclusion of another).

And finally, even if the Kellihers' actions could somehow be construed as an intrusion into Plaintiff's seclusion, Plaintiff's claim still fails because she gave actual or implied consent for the alleged invasion. Specifically, Plaintiff admits that during the call, she clearly stated that she would take the issues she allegedly had with Mr. Kelliher to Merrill Lynch management (Mr. Roesch and Ms. Creek) and that they could finish their discussion at work. Facts,¶ 49; *Cassidy v. American Broadcasting Companies*, 377 N.E.2d 126, 131-132 (Ill.FApp. Ct. 1978) ("the right to privacy, is, of course, limited in cases of express or implied consent") citing *Eick v. Perk Dog Food Co.,* 347 Ill. App. 293, 299 (Ill. App. Ct. 1952). Additionally, following the phone call, Plaintiff discussed the call with several co-workers. Facts,¶ 48. For all these reasons, Plaintiff's claims of intrusion into seclusion against the Kellihers fail.

### 2. Plaintiff's Intrusion Into Seclusion Claim Against Merrill Lynch Is Baseless.

Plaintiff's claim for intrusion into seclusion against Merrill Lynch is utterly baseless and she essentially admitted the same in her deposition:

> Q: Are you aware of anything that Merrill Lynch did to invade your privacy or intrude into your seclusion?
>
> [Objections omitted]
>
> Q: Are you aware of anything as we sit here today?
>
> [Objections omitted]
>
> A: I can't think of anything right now.

Pl. Dep. II at 292. As Plaintiff admittedly has no basis for her claim against Merrill Lynch, Merrill Lynch in entitled to summary judgment on this claim.

## H.    PLAINTIFF'S CLAIMS OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS ARE MERITLESS.

To establish a claim of intentional infliction of emotional distress a plaintiff must establish: (1) the conduct was truly extreme and outrageous; (2) the actor *intended* that his conduct inflict severe emotional distress, or knew that there was at least a high probability that this conduct would cause severe emotional distress, and; (3) the conduct must have in fact caused *severe* emotional distress. *Harriston v. Chicago Tribune Co.,* 992 F.2d 697, 702 (7th Cir. 1993); *McGrath v. Fahey,* 126 Ill. 2d 78 (Ill. 1988). "Liability for intentionally inflicting emotional distress has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Public Fin. Corp. v. Davis,* 66 Ill. 2d. 85 (Ill. 1976) (quoting *Restatement (Second) of Torts* § 46 cmt. d (1965)); *Lifton v. Brd. of Educ. of City of Chicago,* 416 F.3d 571, 570-580 (7th Cir. 2005) (behavior must be "so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized community") citing *Feltmeier v. Feltmeier,* 207 Ill. 2d 263 (Ill. 2003). An objective standard is applied to determine whether the alleged conduct was extreme and outrageous. *Harriston,* 992 F.2d at 703 citing *Schroeder v. Lufthansa German Airlines,* 875 F.2d 613, 623 (7th Cir. 1989). "The tort does not extend to 'mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.'" *Breneisen v. Motorola, Inc.,* 512 F.3d 972, 982 (7th Cir. 2008) citing *McGrath v. Fahey,* 126 Ill. 2d 78 (Ill. 1988).

### 1.    Plaintiff Claim Of Intentional Infliction Of Emotional Distress Claim Against the Kellihers Fails.

Plaintiff claims that Mrs. Kelliher intentionally inflicted emotional distress on her when she recorded a portion of Plaintiff's threatening Thanksgiving night phone call, causing Plaintiff

to be terminated from her job with Merrill Lynch.[15]  Similarly, Plaintiff alleges that Mr. Kelliher intentionally inflicted emotional distress on her because of the role he played in recording her threatening phone call and because he allegedly was not truthful about the phone call when he reported it to management. Plaintiff's claims against the Kellihers fail for several reasons.

First, Mrs. Kelliher testified that the only reason she recorded Plaintiff's call was that she could hear Plaintiff yelling, cursing and threatening her husband and she became scared and concerned for the safety of her family.  Facts,¶¶ 50-51.  In other words, Mrs. Kelliher did not make the recording for the purpose of harming Plaintiff in any way, much less with the intention of inflicting severe emotional distress on her.  To the contrary, she made it because she was scared of what Plaintiff might do to her family.  Facts,¶ 51.  Plaintiff even admits that Mrs. Kelliher recorded the phone call because Mrs. Kelliher was "terribly upset and worried."  *Id.* Clearly, Mrs. Kelliher's recording, made in defense of her family, does not constitute behavior that is so "extreme and outrageous" as to be beyond the "bounds of decency" or "regarded as intolerable in a civilized society." Additionally, there is absolutely no evidence that Mrs. Kelliher (or anyone else) acted with the belief that recording a portion of a threatening call (in which Plaintiff specifically stated that she intended to discuss the call and issues with others at Merrill Lynch), would have a high probability of causing Plaintiff severe emotional distress.

It is also critical to note that Plaintiff's contention that Mrs. Kelliher's recording caused her to lose her job is directly contrary to her claim that she was terminated from employment

---

[15] Q:   How did Mrs. Kelliher intentionally inflict emotional distress on you, Miss Carroll?
       [Objections omitted]
  A:   She got me fired.
  Q:   How did she get you fired?
       [Objections omitted]
  A:   She recorded – illegally recorded a phone conversation.

Pl. Dep. II at 308.

with Merrill Lynch in retaliation for having complained about sexual orientation harassment. Dkt. 44, ¶ 3 ("Carroll was subjected to sexual orientation discrimination, and retaliation for her reports/complaints about sexual orientation discrimination. There was no legitimate non-discriminatory basis for her termination."); Pl. Dep. II at 269-271. Plaintiff is bound by her testimony and simply cannot have it both ways. Plaintiff admits that her employment was terminated because she made the phone call to the Kellihers' home. Facts, ¶¶ 66-67, 71. Moreover, it is undisputed that even without a recording of the conversation, Mr. Roesch would have terminated Plaintiff's employment based on Mr. Kelliher's summary of the events (which Plaintiff admits were accurate) and Plaintiff's increasingly erratic behavior. Facts, ¶ 67.

With regard to Plaintiff's claim against Mr. Kelliher, the evidence is clear that Mrs. Kelliher, not Mr. Kelliher, caused a portion of Plaintiff's threatening phone call to be recorded. Facts,¶¶ 50-51. Additionally, Plaintiff's new assertion that Mr. Kelliher's description of the phone call to management was inaccurate is entirely undercut by her admissions that Mr. Kelliher's written summary of the phone call was accurate and that during the call she was "all riled up," "enraged," acting "inappropriately" and had "f_cking snapped". Facts,¶ 48.

Even if Mr. Kelliher had played a role in recording Plaintiff's call, or had inaccurately described the call to management, these facts would be entirely insufficient to establish a claim of intentional infliction of emotional distress as this conduct is clearly not of a "truly extreme and outrageous" nature. *Miller v. Equitable Life Assur, Soc. of U.S.,* 181 Ill. App. 3d 954 (Ill. App. Ct. 1989) (claim dismissed where plaintiff alleged she was surrounded by co-workers who touched her breast and made sexual advances); *Morrison v. Sandell,* 112 Ill. App. 3d 1057 (Ill. App. Ct. 1983) (claim dismissed where plaintiff alleged toilet tissue and human waste were placed in a drawer plaintiff would open). As the Illinois Supreme Court stated in *Knierim v.*

*Izzo,* "indiscriminate allowance of actions for mental anguish would encourage neurotic over-reactions to trivial hurts." *Knierim v. Izzo,* 22 Ill. 2d 73, 85 (Ill. 1961).

Finally, there is absolutely no evidence that Mr. Kelliher reported Plaintiff's threatening phone call to Merrill Lynch management to subject Plaintiff to severe emotional distress - nor is that even a viable assertion in light of Plaintiff's statements during the call that she was going to take the matter to management and her testimony that she did not care who in Merrill Lynch management Mr. Kelliher told about the call. Facts,¶ 49. For all these reasons, the Kellihers are entitled to summary judgment on Plaintiff's claims of intentional infliction of emotional distress.

### 2. Plaintiff's Claim Of Intentional Infliction Of Emotional Distress Against Merrill Lynch Is Meritless.

In support of her claim that Merrill Lynch intentionally inflicted her to emotional distress, Plaintiff alleges that, despite the undisputed fact that she called a supervisor at home late Thanksgiving evening, yelling, cursing and acting irrationally, Merrill Lynch should have solicited additional details about the call from her before placing her on administrative leave pending termination.[16] Even if true, Plaintiff's allegation does not rise to the level of an actionable claim of intentional infliction of emotional distress under Illinois law as there is absolutely no evidence that Merrill Lynch's actions were "extreme and outrageous," done with the intention of causing Plaintiff severe emotional distress or "beyond all reasonable bounds of decency." *Williams v. So. Ill. Riverboat/Casino Cruises, Inc.,* 2008 U.S. Dist. LEXIS 31309, *35-36 (S.D. Ill. April 16, 2008) ("defendant's acts must be of such that when recited to an average member of the community, the person would be resentful against the actor and be led to

---

[16] Notably, at the time Plaintiff made the call to the Kellihers' home, she was already represented by counsel who was engaged in dialogue with Merrill Lynch counsel. Facts,¶ 68. Consequently, had she desired to do so, Plaintiff had plenty of opportunity to provide Merrill Lynch with additional information about her Thanksgiving (November 24, 2005) phone call to the Kellihers' home prior to being placed on administrative leave on November 29, as well as plentiful opportunities thereafter to provide such information through her counsel.

exclaim, 'Outrageous'") (cites omitted).  Consequently, Merrill Lynch is entitled to summary judgment on this claim.

## IV.    <u>CONCLUSION</u>

For all the reasons stated herein, Defendants respectfully request that this Court enter an Order granting summary judgment as to all claims asserted by Plaintiff in this action.

Respectfully submitted,

<u>/s/ Carole G. Miller</u>
Carole G. Miller
Maynard, Cooper & Gale, PC
1901 Sixth Avenue North
2400 Regions/Harbert Plaza
Birmingham, Alabama 35203

Peter Cooper
Paul Weltlich
Lawrence, Kamin, Saunders & Uhlenhop
300 South Wacker Drive, Suite 500
Chicago, Illinois 60606

*Counsel for Defendants*

33

01968167.3

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 7, 2010, a copy of the foregoing was served via the PACER electronic filing system to:

John C. Ireland, Esq.
Law Office of John C. Ireland
1921 Charles Lane
Aurora, Illinois 60505

/s/ *Carole G. Miller*
OF COUNSEL

34

01968167.3