IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MARY CARROLL,  )<br>  )<br>  Plaintiff,  )<br>  )<br>  v.  )<br>  )<br>MERRILL LYNCH, JIM KELLIHER,  )<br>and PATRICIA KELLIHER,  )<br>  )<br>  Defendants.  )  | Civil Action No: 07C 1575<br>Honorable Rebecca R. Pallmeyer |

**DEFENDANTS' STATEMENT OF UNDISPUTED MATERIAL FACTS SUBMITTED IN SUPPORT OF THEIR MOTION FOR COMPLETE SUMMARY JUDGMENT**

Defendants Merrill Lynch, Pierce, Fenner & Smith Incorporated ("Merrill Lynch") and Defendants Jim and Patricia Kelliher (collectively, "Defendants") submit the following Statement of Material Facts, filed pursuant to Local Rule 56.1(a)(3), in support of Defendants' Motion for Complete Summary Judgment.[1]

**DESCRIPTION OF THE PARTIES AND PLAINTIFF'S EMPLOYMENT AT MERRILL LYNCH**

1. Merrill Lynch is a worldwide financial management and advisory company, providing financial advice and investment banking services.

2. At all times relevant to her claims, Plaintiff Mary Carroll ("Carroll" or "Plaintiff") was employed with Merrill Lynch as a CMTA Trade Balancer, which is a support role in Merrill Lynch's Clearing Services department, in Chicago. See Plaintiff's March 23, 2010 Deposition

---

[1] The "undisputed" facts recited herein are presented for purposes of summary judgment only, and in the light most favorable to Plaintiff as required. Merrill Lynch reserves the right to dispute these facts if necessary in later stages of this case.

("Pl. Dep. II"), attached as Exhibit A to Defendants' Evidentiary Submission,[2] at 113-14, Ex. 58 at 138.

3. In this position, Plaintiff was responsible for ensuring that the trading information matched after trades were done on the trading floor, and if the information did not match, she would return to work with representatives from the trading firms to resolve the problem. Defendants' Amended Supplemental Responses and Objections to Plaintiff's First Interrogatories, attached as Exhibit E-1 to Defendants' Evidentiary Submission.

4. In June 2005, Plaintiff's direct supervisor was Doug Hren, who reported to Lou Buttny. Pl. Dep. II at 65.

5. On or about August 1, 2005, Walter Roesch became the Vice President over the Clearing Services for Merrill Lynch. Deposition of Walter Roesch ("Roesch Dep."), attached as Exhibit D to Defendants' Evidentiary Submission, at 10-11; Pl. Dep. II at 66.

6. Defendant Jim Kelliher was a trading floor supervisor in Merrill Lynch's Chicago Clearing Services department. Roesch Dep. at 69; Pl. Dep. II at 61.

7. Defendant Patricia Kelliher is Jim Kelliher's wife. Deposition of Patricia Kelliher ("P. Kelliher Dep."), attached as Exhibit B to Defendants' Evidentiary Submission, at 13.

**PLAINTIFF'S COMPLAINTS TO MERRILL LYNCH'S EMPLOYEE SERVICE CENTER; TERMINATION OF MR. HREN'S AND MR. BUTTNY'S EMPLOYMENT**

8. Throughout her employment with Merrill Lynch, Plaintiff received, and had access to, Merrill Lynch's anti-discrimination and harassment policies. Pl. Dep. II at 5, Ex. 58 at 149-160 and Exs. 12-21.

---

[2] All exhibits and supporting evidence to this Statement of Material Facts are attached to Defendants' Evidentiary Submission filed contemporaneously herewith.

9. In late July 2005, Plaintiff called Merrill Lynch's Employee Service Center and reported concerns about her supervisor, Mr. Hren, including an allegation that he had made an inappropriate comment to her in reference to her sexual orientation (lesbian). Pl. Dep. II at 20, 77-79, 86-87, Ex. 58 at 285.

10. Merrill Lynch Employee Relations representative, Joanne Gonzalez, investigated Plaintiff's reported concerns and met with Plaintiff and some of her co-workers. Pl. Dep. II at 80-81.

11. After completing her investigation, Ms. Gonzalez reported her findings to Merrill Lynch management, including Mr. Roesch. Roesch Dep. at 15-17.

12. After reviewing the results of the investigation, management decided to terminate the employment of Mr. Hren and his supervisor, Mr. Buttny, based on Mr. Hren's inappropriate remarks and Mr. Buttney's failure to address Mr. Hren's behavior. Roesch Dep. at 15-17.

13. Mr. Hren and Mr. Buttny were terminated on August 25, 2005. Pl. Dep. II at 87.

14. That same day, Mr. Roesch held a department meeting and explained that Mr. Hren and Mr. Buttny were no longer employed with the company, that Merrill Lynch would not tolerate violations of its policies regarding appropriate workplace behavior, that any further discussion regarding the termination of these two individuals should be reported to him immediately, and retaliation would not be tolerated. Roesch Dep. at 23-24; Pl. Dep. II at 102-103.

15. Plaintiff did not report to work that day because she overslept, so Mr. Roesch called her at home to inform her that the two supervisors had been terminated for failing to adhere to Merrill Lynch's policies and relayed the same message he presented in the department meeting – *i.e.,* that there should be no further discussions or speculation regarding the termination of these two supervisors. Pl. Dep. II. at 98, 102-103, 105; Roesch Dep. at 25.

16. Plaintiff alleges that later that night (August 25, 2005), Mr. Hren called her at home, apologized for the way he had treated her and warned her that people were upset with her so she had better "watch her back." Pl. Dep. II at 100-102.

17. As a result of Mr. Hren's call, Plaintiff stayed home from work the following day and called Ms. Gonzalez to report Mr. Hren's comment – "watch your back." Pl. Dep. II at 102, Ex. 58 at 290.

18. After Plaintiff reported Mr. Hren's alleged comment to Ms. Gonzalez, Merrill Lynch management called Mr. Hren at home and instructed him not to contact Plaintiff again. Roesch Dep. at 22-23.

19. Mr. Roesch then had a second meeting with the department and reminded everyone that there should be absolutely no further discussions regarding the terminations of the two supervisors. Roesch Dep. at 55.

## NEW LEADERSHIP AND REORGANIZATION OF THE DEPARTMENT

20. After terminating Mr. Hren's and Mr. Buttny's employment, Mr. Roesch restructured the department and brought in Liz Creek (a supervisor from another department). Pl. Dep. II at 66-67, 97, 106-107; Roesch Dep. at 38.

21. Under the new structure, the A.M. Floor Supervisor, Jim Kelliher, and the P.M. Floor Supervisor, Mike Culhane, reported to Ms. Creek (who reported to Mr. Roesch). Roesch Dep. at 38-40.

22. Plaintiff reported to Karen Klatt, and Ms. Klatt reported to Jim Halm (another manager in the department who was at Ms. Creek's level). Roesch Dep. at 40.

23. When Plaintiff returned to the office, she and Mr. Roesch had a face-to-face meeting during which Mr. Roesch explained the new structure of the department. Pl. Dep. II at 105-107; Roesch Dep. at 26-28.

24. Plaintiff responded by stating that she had been Mr. Hren's "back-up" by taking attendance and answering questions from trade-checkers in his absence, and under the new structure, she had been demoted. Pl. Dep. II at 107; Roesch Dep. at 26-28, 137-140, 145.

25. Mr. Roesch explained that: because the department structure had changed, she had not been demoted; there was no need for a "back-up" for a position which no longer existed; going forward, attendance would be tracked by managers; her balancing duties would not change, and again, she had not been demoted.[3] Roesch Dep. at 26-33, 137-140, 145; Pl. Dep. II at 123.

26. Despite Mr. Roesch's explanations and assurances, and notwithstanding the facts that she had never held a supervisory position and there had been no change to her title, pay or benefits, Plaintiff continued (for months) to insist that she had been "demoted" and then began questioning other employees about their job duties. Pl. Dep. II at 106-108, 112, 118-120, 122, Ex. 58 at 93; Roesch Dep. 26-33, 139, 145.

27. Plaintiff then told Mr. Roesch that she should have long since been promoted and that prior to Mr. Buttney's termination, she and Mr. Buttny had generally discussed promoting her to Assistant Vice President ("AVP"). Pl. Dep. II at 104, 124; Roesch Dep. at 28, 137-138.

28. Mr. Roesch stated that he was unaware of any discussions regarding promoting Plaintiff and told her to forward to him any information she had about these alleged discussions with Mr. Buttny (which she never did). Pl. Dep. II at 124, 127; Roesch Dep. at 28.

---

[3] Plaintiff also contends that another employee, Rod Precht, also performed as Mr. Hren's "back-up." Pl. Dep. II at 122-123. Under the new structure, neither Plaintiff nor Rod Precht served as "back-up" for Mr. Hren's (now) non-existent position. Roesch Dep. at 140.

01941585.2

29. On more than one occasion over the next few months, Plaintiff called Ms. Gonzalez and reported that she felt threatened because unnamed men had been looking at her and placing their hands on their crotches and because unnamed individuals had allegedly made threatening remarks to her. Pl. Dep. II at 127-128; 130; 131-132; 157-159, 162, 163-164, Exhibit 60.

30. Despite the urging of Ms. Gonzalez and others in the Employee Service Center, Plaintiff repeatedly refused to provide the names of the alleged harassers; thus, Merrill Lynch could not investigate her concerns. Pl. Dep. II at 128, 130-132, 134-135, 162-164, Ex. 40 (Plaintiff's IM dated November 17, 2005 "HR wants names. I won't give them"), Ex. 58 at 310, 313; Roesch Dep. at 45-46, 108-109.

31. Plaintiff admits that if she had reported the individuals who allegedly harassed and/or retaliated against her, Merrill Lynch would have fired them because of the "zero tolerance" policy. Pl. Dep. II; Ex. 58 at p. 316-318.

32. On September 15, 2005, Ms. Creek and Mr. Halm held meetings with their staffs regarding the Department Rules which included the following:

> We will strictly follow the ML policy of zero tolerance for harassment of any kind.
> **Verbal:** unwelcome discussions/questions about sex, race, color, etc.; patronizing comments; jokes with sexual, racial, religious or ethnic content; obscene or suggestive sounds or gestures; sexually explicit language; and other verbal remarks or action that creates a hostile work environment.
> **Visual:** any items that may be construed as offensive – posters, cartoons, pictures, etc.
> **Physical:** physical contact such as hitting or pushing, inappropriate gestures, unwelcome touching.

Pl. Dep. II at 133, Ex. 61.

33. In mid-September 2005, all CMTA balancers, including Plaintiff, were moved to the 25th floor. Pl. Dep. II at 147-149; Roesch Dep. at 37-38.

34. On September 22, Plaintiff asked Ms. Creek how Merrill Lynch would fill the vacant P.M. Trade Checking Supervisor position, and Ms. Creek: (a) informed her that the job would be

6
01941585.2

35. Shortly thereafter, Plaintiff told Ms. Creek that she was not interested in the position. Pl. Dep. II at 151-152.

36. On September 28, 2005, Plaintiff emailed Ms. Creek and asked whether she had ever been considered for the P.M. Trade Checking Position. Pl. Dep. II at 152, Ex. 23.

37. Ms. Creek stated that only individuals who applied for the position online were considered for the position and Plaintiff replied by asking "why was I not considered?" Pl. Dep. II at 152, Ex. 23.

38. Ms. Creek and Mr. Roesch then discussed the issue with Plaintiff, and Plaintiff admitted that she had the opportunity to apply and had told Ms. Creek that she was not interested. Pl. Dep. II at 154-155, Ex. 23.

39. Notwithstanding the fact that she did not want the position and never applied for it (even though Ms. Creek gave her explicit instructions on how to do so), during this conversation Plaintiff became hysterical, and began screaming that she had been overlooked for the position because management had not specifically asked her to apply for this position. Pl. Dep. II at 155-56; Roesch Dep. at 35-36, 135-137.

40. After the call, Plaintiff was crying and so upset that a supervisor had to send her home in a taxi. Roesch Dep. at 35-36, 136-137; Pl. Dep. II at 155-56.

41. On October 21, 2005 (a Friday), Plaintiff complained to her supervisor, Ms. Klatt, that "people" on the 11th floor were not picking up her phone calls, and Ms. Klatt immediately looked into the issue. Roesch Dep. at 64-65, 67, 72, 73, 75, Ex. 18.

01941585.2

42. The following Monday, October 24, 2005, instead of following up with her supervisor, Plaintiff announced loudly to someone on the phone that she planned to make a "big deal" about her phone calls not being answered on the 11th floor, that her managers were not taking it seriously and that she was "not going to lose on this." *Id.*; *see also* Roesch Dep. Ex. 19.

43. Mr. Halm was reported overhearing the foregoing to Mr. Roesch who then called Ms. Creek about the issue. Roesch Dep. at 73.

44. Ms. Creek explained to Mr. Roesch that she had looked into Plaintiff's allegations, that Plaintiff's calls *were* being answered, and Ms. Creek was not aware of a continuing problem. Roesch Dep. at 73-75.

45. Around this same time, Plaintiff questioned Jim Kelliher, the trading floor supervisor, about his job duties, and Mr. Kelliher explained that he was responsible for supervising the trading floor activities and the trade-checkers. Roesch Dep. at 69, Ex. 18; Pl. Dep. II at 167.

46. In response, Plaintiff asserted that he was doing *her* job. Roesch Dep. at 69, Ex. 18.

**PLAINTIFF'S INAPPROPRIATE AND THREATENING PHONE CALL TO THE KELLIHERS' HOME ON THANKSGIVING NIGHT OF 2005**

47. Late Thanksgiving evening (Thursday, November 24, 2005), upset because she did not believe Jim Kelliher deserved to be a supervisor, Plaintiff made a highly inappropriate phone call to Mr. Kelliher's home. Pl. Dep. II at 166.

48. During this phone call, Plaintiff was very angry and cursed, threatened and yelled at Mr. Kelliher and threatened Mr. Kelliher with losing his job and that, based on her behavior during the call, it was reasonable for Mr. Kelliher to feel threatened. Pl. Dep. II at 166, 174, 175 (admits she got "all riled up" and "angry"), 178-180, 184-185, 188, 190 (admits she was "enraged", acting "inappropriately" and "irrationally" and she would have felt "threatened" by

8

49. Plaintiff further stated during the call that she would take the issues she allegedly had with Mr. Kelliher to Merrill Lynch management (Walter Roesch and Liz Creek) and that they could finish their discussions at work and that she did not care who in Merrill Lynch management Mr. Kelliher told about the call. Pl. Dep. II at 186, 189, 193-197.

50. Mrs. Kelliher (who has never been a Merrill Lynch employee) became concerned when she heard Plaintiff's loud and threatening voice from across the room and went upstairs to listen to the call. P. Kelliher Dep. at 37, 40-42, 27-35, 51-55, 57.

51. After more clearly hearing Plaintiff's threatening tone and irrational behavior, Mrs. Kelliher became increasingly worried for the safety and well-being of her family (husband and two children) and pushed a button on the family's digital answering machine which caused a portion the conversation to be recorded. P. Kelliher Dep. at 37, 40-43; Pl. Dep. II at 208 (admits Mrs. Kelliher recorded the call because she "was terribly upset and worried.").

52. When the machine exhausted its recording capacity, Mrs. Kelliher went back downstairs to her husband and demanded that he end the call so he could explain what was happening and why Plaintiff was so angry. P. Kelliher Dep. at 45-50.

53. Mr. Kelliher ended the phone call and then explained to his wife that he had no idea what the call was about or why Plaintiff was so angry. P. Kelliher Dep. at 51-54, 57.

54. Mr. Kelliher was not Plaintiff's supervisor, and prior to this inappropriate phone call to Mr. Kelliher's home, Plaintiff and Mr. Kelliher had never had any disputes over work-related issues. Pl. Dep. II at 63-64, 171-173.

55. Upset by the call and concerned about Plaintiff's unexplained and threatening behavior, Mr. Kelliher then called and left his supervisor, Ms. Creek, a message regarding Plaintiff's threatening phone call. P. Kelliher Dep. at 69-70.

56. In the meantime, following the call, Plaintiff typed up an email summarizing the phone call that she intended to send to Mr. Kelliher (but apparently never did). Pl. Dep. II at 192-195, Ex. 44; Deposition of Jim Kelliher ("J. Kelliher Dep."), attached as Exhibit C to Defendants' Evidentiary Submission, at 10.

57. The following day (Friday, November 25, 2005), Mr. Kelliher went to work and drafted a summary of Plaintiff's erratic and threatening phone call, which he forwarded to Ms. Creek and Mr. Roesch. J. Kelliher Dep. at 14-15, Ex. 25; Pl. Dep. II at 203-205, Ex 43 (Plaintiff admits that Mr. Kelliher's summary of the call is accurate, except she contends that the call occurred in two parts).

58. Mr. Kelliher also discussed the matter with Ms. Creek and via phone with Mr. Roesch (who was in New Jersey), telling them that his wife had recorded a portion of Plaintiff's call. J. Kelliher Dep. at 7; Roesch Dep. at 83-84.

59. Mr. Roesch requested that Mr. Kelliher play the call for him (and Ms. Creek) so that they could address Plaintiff's inappropriate and threatening behavior. Roesch Dep. at 83-85, 88-89.

60. Thus, Mr. Roesch called Ms. Creek and Mr. Kelliher on a recorded line (in New Jersey), had Mrs. Kelliher conferenced in from home, and asked Mrs. Kelliher to play the recorded portion of Plaintiff's phone call - which she did so that they could investigate Mr. Kelliher's report. Pl. Dep. II at 184-185, Ex. 64; P. Kelliher Dep. at 78-79; J. Kelliher Dep. at 7-8; Roesch Dep. at 84-85, 88-89,134-135.

61. The recording was played onto a recorded line at Merrill Lynch so that management officials (who were not available for Mrs. Kelliher's initial playing) could later review evidence of the threatening phone call, if necessary. Ex. D, Roesch Dep. at 91-92.

62. After Mrs. Kelliher played the recording, Mr. Roesch ended the call so he could determine what to do in response to Plaintiff's increasingly erratic and highly inappropriate behavior. Roesch Dep. at 133-134.

63. Meanwhile, Plaintiff went to work on Friday, November 25, 2005, and told several Merrill Lynch employees about her call to the Kellihers' home and even told one employee that during the call she got so mad she "f-cking snapped". Pl. Dep. II at 199-201, Ex 45; *see also, id.* at 266-267, Ex. 25.

64. That day after work, the Kellihers were so concerned about what Plaintiff might do, that they decided to go to the police the following day, thus, Mr. Kelliher recorded the call off the family answering machine onto a cassette tape the purpose of filing a report with the police regarding Plaintiff's threatening call. Pl. Dep. II at 209; J. Kelliher Dep. at 9-10; P. Kelliher Dep. at 87.

65. On Monday, November 28, 2005, Al Howell (Mr. Roesch's supervisor) and Frank Dimarco (Mr. Howell's supervisor) listened to the recorded portion of Plaintiff's Thanksgiving night call to the Kellihers on the recorded line. Roesch Dep. at 91-92.

66. Based on Plaintiff's escalating pattern of erratic and highly inappropriate behavior which culminated in her threatening phone call to the Kellihers, Mr. Roesch determined that Plaintiff's employment should be terminated. Roesch Dep. at 93-96, 130.

11
01941585.2

67. Mr. Roesch testified that he would terminate Plaintiff's employment based on Mr. Kelliher's summary of the events (which Plaintiff admits were accurate) and Plaintiff's increasingly erratic behavior. Roesch Dep. at 132-133.

68. Since Plaintiff was already represented by counsel and her counsel had been involved in discussions with Merrill Lynch's legal department for some time, on November 29, 2005, Mr. Roesch placed Plaintiff on administrative leave pending discharge (as opposed to terminating her employment effective immediately) in order to allow the attorneys an opportunity to work out an amicable departure and avoid litigation. Roesch Dep. at 94-95, 131-132; Pl. Dep. II at 216-219, 221-222, Ex. 58 at 61-62; *see* IHRC's April 9, 2000 Recommended Order and Decision ("IHRC Decision"), Exhibit E-2 to Defendants' Evidentiary Submission, p. 2, ¶ 9.

69. On or around December 6, 2005, Merrill Lynch informed Plaintiff's counsel of its intention to discharge Plaintiff. Ex. E-2, p. 2, ¶ 8.

70. On January 18, 2006 (more than two months after the Thanksgiving night call), Plaintiff filed a police report against the Kellihers for taping her voice without her permission. Pl. Dep. II at 302-303.

71. After investigating the complaint, the police consulted with the State Attorney's office which concluded that, due to the circumstances of the call, Mrs. Kelliher's act of recording was exempt from the eavesdropping statute and, therefore, refused to prosecute Plaintiff's charge. P. Kelliher Dep. at 123, Ex. 34.

72. In early February, 2006, Plaintiff's employment was terminated for making the threatening phone call to the Kellihers (after counsel for the parties were unable to work out an agreeable separation). Roesch Dep. at 118; Pl. Dep. II at 218-220, Ex. 50; Ex. E-2 at p. 2, ¶ 10.

## DECISION NOT TO PAY PLAINTIFF AN END-OF-YEAR DISCRETIONARY BONUS

73. While Plaintiff was on administrative leave pending discharge, Merrill Lynch erroneously deposited discretionary bonus money ($4,000 gross/ $2,316 net) into Plaintiff's bank account. Pl. Dep. II at 224, Ex. 65; Roesch Dep. at 10.

74. Plaintiff was not eligible for the discretionary bonus, because she was on administrative leave pending discharge and, therefore, not in "good standing." Roesch Dep. at 10.

75. Once it discovered the error, Merrill Lynch retracted the erroneously deposited funds. Roesch Dep. at 10.

## PLAINTIFF'S PHONE CALLS TO BUILDING SECURITY AND SUBSEQUENT BAN FROM THE BUILDING

76. On February 14, 2006, Mr. Roesch was advised that Plaintiff had been calling building security and asking the Director of Security to investigate an incident at Merrill Lynch which allegedly happened more than a decade ago. Pl. Dep. II at 232-234; Roesch Dep. at 118.

77. Mr. Roesch was further advised that when building security directed Plaintiff to report her concerns to Merrill Lynch, Plaintiff refused because Merrill Lynch had already terminated the employment of two of the employees. Roesch Dep. at 118-19, Ex 46, p. 1.

78. Concerned about Plaintiff's continued erratic behavior, Mr. Roesch authorized Plaintiff's name to be placed on a list of individuals that were banned from the building. Roesch Dep. at 118.

79. On May 2, 2006, Mr. Roesch was informed that Plaintiff was allegedly trying to get a job with a trading company located in the building and he immediately had the ban lifted. Roesch Dep. at 121-22, 125, Ex. 55; Pl. Dep. II at 242.

80. Plaintiff has produced absolutely no information confirming the existence of this alleged company (Trading Services LLC), nor any evidence of the alleged offer of employment. Ex. E-3

81. Being banned from the building did not prevent Plaintiff from being employed by this prospective employer. Pl. Dep. II at 244-245.

### PLAINTIFF'S ILLINOIS DEPARTMENT OF HUMAN RIGHTS AND EQUAL EMPLOYMENT OPPORTUNITY COMMISSION CHARGES

82. On January 17, 2006, Plaintiff filed a charge of discrimination against Merrill Lynch with the Equal Employment Opportunity Commission ("EEOC") and the Illinois Department of Human Rights ("IDHR") alleging a failure to accommodate claim (based on an alleged back disorder) and retaliation for having complained about offensive comments about her sexual orientation made by her supervisor (hereinafter referred to as "Charge #1"). Pl. Dep. II at 27, Ex. 49.

83. On March 2, 2006, Plaintiff filed another charge with the EEOC/IDHR alleging discrimination/retaliation regarding her reported complaints and further alleged that "on Dec. 6, 2005 I was offered a severance package which I declined. On Feb. 6, 2006, I was terminated." (hereinafter referred to as "Charge #2"). Pl. Dep. II at 28, Ex. 50.

84. On July 14, 2006, Plaintiff filed a third charge with the EEOC/IDHR alleging that Merrill Lynch provided information to a prospective employer which caused the alleged prospective employer to rescind a job offer (hereinafter referred to as "Charge #3"). Pl. Dep. II at 28-29, Ex. 51.

85. On November 30, 2006, the IDHR informed Plaintiff that it had not completed its investigation of Charge #1 and she had until February 16, 2007 to file a Complaint with the

86. On June 18, 2008, Plaintiff filed her First Amended Complaint against Merrill Lynch in the IHRC matter (clarifying that her complaints of discrimination, harassment and retaliation were based solely on her sexual orientation) and specifically stating: "Complainant, Mary Carroll, brings this Complaint against Respondent Merrill Lynch seeking damages for Respondent's egregious sexual orientation discrimination, harassment, retaliation and related illegal conduct constituting violations of Illinois Human Rights Act." Ex. E-4, at ¶ 1 (emphasis added).

87. On December 20, 2006, the EEOC issued Plaintiff Dismissal and Notice of Rights letters for Charge #2 because their investigation failed to reveal information that established violation law and for Charge # 3 because EEOC/IDHR did not have jurisdiction over these claims. Pl. Dep. II at 5, Ex. 58 at 370, Ex. 53; Declaration of Carole Miller, Ex. E-5 to Defendants' Evidentiary Submission, ¶ 4.

88. An EEOC investigation memorandum states as follows: "[Charging Party] states that her interpretation of these comments and gestures were harassment based on her sexual orientation. Lack of jurisdiction.") Declaration of Carole Miller, Ex. E-6 to Defendants' Evidentiary Submission.

89. On September 10, 2008, after litigating the matter for 18 months in the IHRC, Merrill Lynch filed a Motion to Dismiss Plaintiff's Claims or, in the Alternative, for Judgment as a Matter of Law in the IHRC matter. Declaration of Carole Miller, Ex. E-7.

90. On April 9, 2010, the IHRC Administrative Law Judge entered an order granting Merrill Lynch's dispositive motion and recommending that the matter be dismissed in its entirety. *See* IHRC's Recommended Order and Decision ("IHRC Decision"). Facts, Ex. E-2

Dated: December 7, 2010

                                             Respectfully submitted,
                                             DEFENDANTS

By:     */s/ Carole G. Miller*
           Carole G. Miller
           Maynard, Cooper & Gale, PC
           1901 Sixth Avenue North
           2400 Regions/Harbert Plaza
           Birmingham, Alabama 35203

           Peter Cooper (6218794)
           Paul M. Weltlich (06227217)
           Lawrence, Kamin, Saunders & Uhlenhop
           300 South Wacker Drive, Suite 500
           Chicago, Illinois 60606
           (312) 372-1947

           *Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on December 7, 2010, a copy of the foregoing was served via the PACER electronic filing system to:

John C. Ireland, Esq.
Law Office of John C. Ireland
1921 Charles Lane
Aurora, Illinois 60505

/s/ *Carole G. Miller*
OF COUNSEL

17
01941585.2